UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

RANDALL C. HOLMAN           :
                            :
VS.                         :       NO. 3:02CV1523 (CFD)
                            :
JOHN CASCIO and             :
MICHAEL D'AMATO             :       AUGUST 5, 2004

### BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

This is an action pursuant to 42 U.S.C. § 1983 and the supplementary jurisdiction of this court pursuant to 28 U.S.C. § 1367(a). For purposes of the present motion, the defendants assume the factual accuracy of the plaintiff's essential claims, to wit:

On October 29, 1997, at Laurelwoods Nursing Home, 451 North High Street, East Haven, Connecticut, the defendants falsely arrested the plaintiff on charges of breach of peace, criminal trespass in the first degree and interfering with police. The said arrest was made without a warrant.

On November 4, 1997, the defendant Cascio, with the knowledge and assistance of defendant D'Amato, prepared a written report regarding the arrest of the plaintiff on October 29, 1997, and alleging the events which the defendants claimed had led to that arrest. This report was prepared for the specific purpose of being forwarded to the prosecuting attorneys of the Connecticut Superior Court and thereby initiating and maintaining the criminal prosecution of the plaintiff on the aforesaid charges.

1

The said report was false in all material respects and maliciously attempted to make it appear that the plaintiff had committed the aforesaid crimes while in fact the defendants knew that the plaintiff was innocent of those crimes and indeed had not committed any crime at all.

As a result, the plaintiff was prosecuted for a period of almost three years in the Superior Court for Geographical Area Eight at New Haven. The plaintiff was required to hire attorneys to defend himself on the said false charges and to appear in court many times as an accused criminal, and he suffered both economic loss and severe emotional distress.

In early October of 2000, all of the aforesaid false criminal charges were nolled by an Assistant State's Attorney in the Superior Court at New Haven.

The defendants have moved for summary judgment on the basis of these claims. They assert that the entry of an unconditional nolle prosequi, as in this case, is not a "favorable disposition" of the underlying prosecution. They contend that such a favorable disposition is necessary, not only for the plaintiff's malicious prosecution claim, but also for his false arrest claim. The defendants thus ask the court to take a stand on an issue which presently divides the judges of this district and which, in this case, may furnish the Second Circuit an opportunity to take a stand on the issue.

The issue is, quite simply, whether a definitive ruling by the Connecticut Supreme Court which has stood unchallenged for almost sixty years is to be cast aside not by the court which issued it but by a federal court imposing its will upon

2

the State of Connecticut.  More, the defendants ask this court to decide not only the federal application of a principle of state law, but also the state's application of its own law.

In Ricciuti v. New York City Transit Authority, 124 F.3d 123, 130 (2d Cir. 1997), the Second Circuit defined malicious prosecution as a Fourth Amendment cause of action:  "To prevail on a claim of malicious prosecution, four elements must be shown:  (1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiff's favor."  Another Second Circuit panel amalgamated these decisions and held that a fifth element, post-arraignment restraint of liberty, is necessary to establish a federal (but not a state) malicious prosecution claim, but that this restraint of liberty is demonstrated adequately by the fact that the plaintiff was required to return to court after arraignment or comply with the conditions of his pretrial release.  Rohman v. New York City Transit Authority, 215 F.3d 208, 215-16 (2d Cir. 2000).

As noted, one of the essential elements of a Section 1983 malicious prosecution suit, as in the state common law malicious prosecution suits from which this constitutional cause of action is derived, is that the underlying criminal prosecution have terminated favorably to the accused.  See Brummett v.

3

Cambele, 946 F.2d 1178 (5th Cir. 1991).  What constitutes a "favorable

termination" may well be a function of state law.  Janetka v. Dabe, 892 F.2d 187,

189 (2d Cir. 1989).  Citing Conway v. Village of Mt. Kisco, 750 F.2d 205, 214 (2d

Cir. 1984).

      A critical issue in malicious prosecution litigation is whether the underlying

state court prosecution truly was favorably terminated.  Ordinarily, this question

is one of state law. See Reed v. City of Chicago, 77 F.3d 1049 (7th Cir. 1996).

See also Easton v. Sundram, 947 F.2d 1011, 1017 (2d Cir. 1991).  Reasonably

enough, state courts ought to be the best judges of what sorts of dispositions are

favorable under their laws.  The Second Circuit moved away from that view in

1992, however, applying what had been a New York standard to Connecticut

cases.  In Roesch v. Otarola, 980 F.2d 850 (2d Cir. 1992), the court, presumably

relying on Singleton v. City of New York, 632 F.2d 185 (2d Cir. 1980), cert.

denied, 450 U.S. 920 (1981), and Hygh v. Jacobs, 961 F.2d 359, 368 (2d Cir.

1992), held that dismissal of a Connecticut criminal prosecution under the

"accelerated rehabilitation" program provided by Conn. Gen. Stat. § 54-56e,

which results in erasure of the arrest itself *nunc pro tunc*, was not sufficiently

favorable to support a federal malicious prosecution action.  Singleton and Hygh

had followed a line of New York authority expressed in, e.g., Ryan v. New York

Tel. Co., 62 N.Y.2d 494, 504-05, 467 N.E.2d 487, 493, 478 N.Y.S.2d 823, 829

4

(1984); and Kramer v. Herrera, 176 A.D.2d 1241, 576 N.Y.S.2d 736, 737 (4th

Dept. 1991); in holding that New York procedures like "adjournment in

contemplation of dismissal" or "dismissal in the interest of justice" under

N.Y.Crim. Proc. Law § 170.40 (McKinney 1982), were not "favorable" enough for

purposes of a malicious prosecution action.  Cf., Harford v. County of Broome,

102 F. Supp. 2d 85, 95 (N.D.N.Y. 2000).  See also, to the same effect under

Texas law, Taylor v. Gregg, 36 F.3d 453 (5th Cir. 1994).

        In Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995), the court recognized

that "a claim of malicious prosecution brought under section 1983 is governed by

state law."  The court then went on to note that New York interprets the term

"favorable disposition" quite rigidly:  "An acquittal is the most obvious example of

a favorable termination.  In many instances, however, criminal proceedings are

terminated in a manner that does not establish either guilt or innocence.  In the

absence of a decision on the merits, the plaintiff must show that the final

disposition is indicative of innocence."  The court then held that the New York

court's dismissal of an indictment with leave to reprosecute -- in other words, a

dismissal without prejudice -- was not a "favorable termination" under New York

law.

        Connecticut courts, however, have had a very liberal view of what sorts of

dispositions are sufficiently "favorable" to allow vexatious litigation or malicious

prosecution suits.  Essentially, it has been the Connecticut position that *any* disposition, not purchased by the defendant in the original action, which results in no recovery to the original plaintiff is "favorable" for these purposes.  See, e.g., DeLaurentis v. City of New Haven, 220 Conn. 225, 249-50, 597 A.2d 807 (1991); See v. Gosselin, 133 Conn. 158, 48 A.2d 560 (1946); Andreo v. Sakon, 17 Conn. L. Rptr. No. 6, 223 (1996) (holding that a dismissal of a civil suit for failure to prosecute it is sufficiently favorable to support an action for vexatious litigation). So long as the prior action terminated with no adjudication *against* the party who now is the plaintiff in a malicious prosecution (or vexatious litigation) action, the "favorable termination prong is satisfied under Connecticut law.  Thus, the termination of the underlying criminal action need not indicate innocence – merely, it must not indicate guilt.  Russo v. City of Hartford, 184 F. Supp. 2d 169, 185-86 (D. Conn. 2002) (Hall, J.).  Under that view, a dismissal pursuant to the accelerated rehabilitation statute would be sufficiently favorable to support a malicious prosecution action.  One Connecticut court has expressly so held. Grasso v. Newbury, 16 Conn. L. T. 18 at 31 (1990), held that the district court, in reaching a contrary conclusion in Konan v. Fornal, 612 F. Supp. 68 (D. Conn. 1985) (relying upon Singleton), had misinterpreted Connecticut law.  In Grasso, the Superior Court held that an action for state law malicious prosecution could be based upon a dismissal under the accelerated rehabilitation statute.  One

6

Connecticut judge ruling since <u>Roesch</u> has gone so far as to hold that under Connecticut law a suit for vexatious litigation can be based upon a prior civil action in which there was a negotiated settlement, involving the payment of money, if the jury is satisfied that the payment was made solely to avoid further costs of litigation.  <u>Golub v. Holmes</u>, 12 Conn. L. Rptr. No. 4, p. 107 (1994).

Procedurally, the Second Circuit has at least agreed with this jury-oriented approach in cases in which it does not know what the New York state courts would do.  "When the termination of a case is indecisive because it does not clearly address the merits of the charge, the underlying facts must be examined to determine 'whether the failure to proceed implies a lack of reasonable grounds for the prosecution.'...Where...the reasons for a dismissal of charges are in dispute, the matter should ordinarily be submitted to a jury."  <u>Ricciuti v. New York City Transit Authority</u>, 124 F.3d 123, 131 (2d Cir. 1997).

Pursuing its line of thought, the Second Circuit later held in a New York case that "[w]here the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused ...only when its final disposition is such as to indicate the innocence of the accused."  Citing only New York state cases. Continuing to cite only New York state cases, the court went on to note that in New York courts "dismissals for lack of subject matter jurisdiction...and dismissals...for failure to allege sufficient facts to support the charge" are

7

considered insufficiently favorable to support malicious prosecution litigation.

Cf., Breen  v. Garrison, 169 F.3d 152 (2d Cir. 1999).  The court continued that

"[t]he matter of whether the prosecution's effective abandonment of a prosecu-

tion, resulting in a termination 'with prejudice' and thus foreclosing a new

prosecution of the accused on the same charges, constitutes a termination fa-

vorable to the accused for purposes of a malicious prosecution claim generally

depends on the cause of the abandonment."  Having said that, the court noted

that such abandonments procured by the accused ordinarily are insufficiently

favorable (a view with which even Connecticut would agree, See v. Gosselin,

supra) and that when the abandonment is "brought about by the accused's as-

sertion of a constitutional or other privilege...such as the right to a speedy trial" is

a matter as yet undecided by the highest New York court but the Second Circuit

assumes that a dismissal for denial of a speedy trial is sufficiently favorable to

the accused to support an action for malicious prosecution.  Murphy v. Lynn, 118

F.3d 938, 950-51 (2d Cir. 1997); Posr v. Court Officer Shield #207, 180 F.3d

409, 417-48 (2d Cir. 1999).  See Bordeau v. Village of Deposit, 113 F. Supp. 2d

292 (N.D.N.Y. 2000) (Hurd, J.).  See also Robers v. City of Amsterdam, 303 F.3d

155 (2d Cir. 2002), holding that the unexplained four-year abandonment of a

New York state prosecution was sufficient to constitute a "favorable disposition"

of the case.

In May of 2002, the Second Circuit at last implied without directly saying so that it finally had come to understand that the states within the circuit held differing views on what constitutes "favorable termination" and that the district courts in the circuits should apply their own state's law in deciding the question. Like the majority of malicious prosecution cases in the Second Circuit, Fulton v. Robinson, 289 F.3d 188 (2d Cir. 2002), arose in New York state.  As a result, the court applied New York's draconian "favorable termination" rules.  In doing so, however, the court articulated the standard in language it had not used before: "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment,...and establish the elements of a malicious prosecution claim under state law....To establish a malicious prosecution claim under New York law, a plaintiff must show...."  289 F.3d at 195.  This language clearly suggests the court understands that the law it is applying is *only* New York law and not the law of the entire circuit.

The judges in this district are divided on what, as is clear from the foregoing disquisition, should be apparent about the "favorable disposition" element of a malicious prosecution action.  Judge Squatrito, expressly relying upon See v. Gosselin, *supra*, has respected clear state court precedent in holding: "In light of the Connecticut Supreme Court's articulation of the effect of

9

the entry of *nolle prosequi* in an underlying criminal prosecution upon a plaintiff's ability to state a claim for malicious prosecution, the court cannot find that [the plaintiff] may not prevail upon his claim of malicious prosecution." Galazo v. City of Waterbury, 303 F. Supp. 2d 213, 218-19 (D. Conn. 2004).  Judge Underhill, relying exclusively upon New York law and not even mentioning any Connecticut law whatever, has held to the contrary. Assegai v. Bloomfield Board of Education, 308 F. Supp. 2d 65, 70-71 (D. Conn. 2004).  With all due respect to Judge Underhill, Judge Squatrito obviously has the better of this disagreement since he relies, as judges are required to do, upon the law of the state courts in his district rather than upon those of other districts.  Even more obviously, this disposes of the defendants' claim for summary judgment on the plaintiff's state law claim, which of necessity is based solely upon state law.

As to the defendants' argument that the plaintiff's action for false arrest also requires proof of a favorable disposition, and that a nolle doesn't qualify, another judge of this district has expressly held otherwise. Colon v. Ludemann, 283 F. Supp. 2d 747, 754-55 (D. Conn. 2003) (Hall, J.).  That ruling, based upon an analysis of other rulings of both this district and the Second Circuit, squarely addresses the defendants' argument here and defeats it.

The motion for summary judgment must be denied.

10

Respectfully submitted:


_____
John R. Williams (ct00214)
Williams and Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510
(203) 562-9931
FAX: (203) 776-9494
E-Mail: jrw@johnrwilliams.com
Plaintiff's Attorney

<u>CERTIFICATION</u>

_____This is to certify that a copy of the foregoing was mailed, first class mail,

postage prepaid, on the date above stated, to the following counsel of record:

Hugh F. Keefe, Esq.
52 Trumbull Street
New Haven, CT 06510


_____
John R. Williams